



**FILED**

**January 26, 2016**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 2:28 PM



# COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

Raymond Scott,
      Employee,

v.

Snyder Services Plumbing Co.,
      Employer,

And

Builders Mutual Insurance Co.,
      Insurance Carrier.

Docket No.: 2015-08-0118

State File No.: 27889-2015

Date of Injury: January 28, 2015

Judge: Jim Umsted

---

## COMPENSATION HEARING ORDER

---

On January 6, 2016, the Court held a Compensation Hearing on this claim filed by Raymond Scott, the employee, against Snyder Services Plumbing Co. (Snyder), the employer. The issues are: (1) compensability of the claimed work injury; (2) entitlement to medical benefits; (3) entitlement to temporary disability benefits; and (4) entitlement to permanent partial disability benefits.[1] The Court finds that Mr. Scott established by a preponderance of the evidence that he sustained a compensable injury and is entitled to future medical benefits, past temporary disability benefits, and permanent partial disability benefits.

### History of Claim

Mr. Scott is a fifty-year-old resident of Shelby County, Tennessee. He worked for Snyder as a plumber since January 15, 2015. Mr. Scott claims he injured his right arm at work on January 28, 2015. Snyder disputes that Mr. Scott sustained a compensable injury at work.

Mr. Scott testified he injured his right arm at work, when he pulled on an overhead pipe and felt several pops in his arm. He did not immediately report the injury to Snyder because he hoped his injury was minor and feared losing his job.

His arm injury did not improve, and Mr. Scott sought medical treatment on his

---

[1] A complete listing of the technical record, stipulations, and exhibits admitted at the Compensation Hearing is attached to this Order as an appendix.

1

own. He chose to treat at Specialty Orthopedics (Specialty) because his girlfriend worked at that clinic. He first treated at Specialty with Dr. Richard Ennis on January 30, 2015. Dr. Ennis noted the injury occurred two days earlier when Mr. Scott "was pulling hard with his elbow" and "felt a pop." (Ex. 1 at 1.) Mr. Scott did not tell Dr. Ennis the injury occurred at work, and the intake report completed on that date indicates the injury did not occur at work. Dr. Ennis placed Mr. Scott's arm in a sling and splint and referred him to his partner, Dr. Robert Bobo. (Ex. 1 at 1.) On February 3, 2015, Mr. Scott returned to see Dr. Bobo. (Ex. 1 at 2.) Dr. Bobo diagnosed Mr. Scott with a torn biceps tendon and recommended surgery. (Ex. 1 at 2.)

Mr. Scott testified he reported his work injury to his boss, Larry Snyder, shortly after his first visit with Dr. Bobo. According to Mr. Scott, Mr. Snyder recommended handling the injury claim under health insurance rather than reporting a workers' compensation claim. Mr. Scott testified Mr. Snyder told him to talk to his wife, Lisa Snyder, about getting his health insurance backdated, since it was not scheduled to take effect until May 2015. Mr. Scott continued working for Snyder while he awaited coverage approval under Snyder's health insurance plan.

On March 18, 2015, Dr. Bobo performed surgery on Mr. Scott's right arm. (Ex. 1 at 2.) Dr. Bobo testified at his deposition that he kept Mr. Scott off work until releasing him to light-duty work on March 31, 2015. (Ex. 2 at 19.) Mr. Scott testified that Snyder initially accommodated his restrictions of no right-handed work by giving him a helper. However, after approximately one and one-half weeks, Snyder sent him on a job without a helper, and he could not perform the job using one hand. According to Mr. Scott, Mr. Snyder stated he could not pay Mr. Scott to do nothing, and sent him home.

On April 9, 2015, Dr. Bobo entered a note in his records, indicating Mr. Scott's right-arm injury occurred while he was working. (Ex. 1 at 3.) This notation was the first mention of a work-related injury. However, Dr. Bobo testified at a deposition that Mr. Scott advised during his first visit that he injured his right arm at work and the medical record was simply clarified on April 9, 2015. (Ex. 2 at 25.)

Snyder ultimately notified its workers' compensation insurance carrier of this claim. On April 13, 2015, Mr. Scott received a panel of physicians and selected Dr. Bobo.

On April 16, 2015, after Mr. Scott told Dr. Bobo that Snyder was not accommodating his restrictions, Dr. Bobo took him completely off work to protect his right arm. (Ex. 2 at 21-22.) Dr. Bobo received correspondence from Snyder's workers' compensation carrier, asking if certain duties would satisfy Mr. Scott's work restrictions. Dr. Bobo testified that the mentioned duties would be "hard to do just one-handed." (Ex. 2 at 44-45.) Mr. Scott stated that he remained off work until Dr. Bobo placed him at maximum medical improvement (MMI).

2

Snyder's carrier denied Mr. Scott's workers' compensation claim, and Mr. Scott filed a Petition for Benefit Determination on July 1, 2015, seeking medical and temporary disability benefits. (TR 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on July 21, 2015. (TR 2.) The Court held an Expedited Hearing on August 14, 2015, and on October 1, 2015, it issued an order denying Mr. Scott's request for benefits. The Expedited Hearing Order set the matter for an initial hearing on October 23, 2015, and this Court entered an Agreed Initial Hearing Order on October 30, 2015. (TR 3.) As set forth in the Agreed Initial Hearing Order,[2] the Court conducted a Compensation Hearing on January 6, 2016.

At the Compensation Hearing, Mr. Scott called a former coworker, Brandon Hardin, to corroborate his description of the injury. Mr. Hardin testified he did not know Mr. Scott personally but worked with him at Snyder for about three months in early 2015. He testified he was Mr. Scott's helper and was assisting Mr. Scott lay pipe at Trinity Baptist Church in Southaven, Mississippi on January 28, 2015, when Mr. Scott injured his arm. According to Mr. Hardin, Mr. Scott was on a ladder trying to fit a pipe through a small hole in the concrete slab above him and had to pull the pipe to get it in place. Mr. Hardin stated he was on the floor above Mr. Scott and heard a pop and a noise that sounded like Mr. Scott was in pain. Mr. Scott instructed Mr. Hardin to come downstairs, and when he did, he saw Mr. Scott holding his arm. Mr. Hardin further testified Mr. Scott complained that his arm was hurting.

Snyder did not call any witnesses to testify at the Compensation Hearing. However, both Mr. Scott and Snyder relied on Dr. Bobo's deposition testimony of June 25, 2015. During his deposition, Dr. Bobo testified Mr. Scott's employment caused his torn distal biceps tendon. (Ex. 2 at 18, 41.) Dr. Bobo also testified it was Mr. Scott's idea to treat under his health insurance rather than workers' compensation. Dr. Bobo stated he agreed to treat Mr. Scott under health insurance, at least in part, because Mr. Scott's significant other worked for Specialty. (Ex. 2 at 37-39.) Snyder argued Dr. Bobo showed favoritism toward Mr. Scott and colluded with Mr. Scott to defraud Mr. Scott's health insurance carrier. As such, it contended Dr. Bobo was not a "reputable physician" as required by Tennessee Code Annotated section 50-6-204 (2015).

Mr. Scott further relied on Dr. Bobo's Form C-32 Standard Form Medical Report, dated November 16, 2015. This report indicated Mr. Scott reached MMI on August 25, 2015, and retained a four percent permanent impairment rating to the body as a whole

---

[2] The Agreed Initial Hearing Order also required the parties to participate in post-discovery mediation, which they did on December 15, 2015. The mediation did not result in a settlement, and the Mediating Specialist prepared a "Benefit Review Conference Report" listing the remaining contested issues as compensability, temporary disability benefits, medical benefits, and extent of permanent vocational disability. At the Compensation Hearing, the parties agreed to consider the "Benefit Review Conference Report" as a "Dispute Certification Notice."

based on the American Medical Association Guide to Evaluation of Permanent Impairment, 6th Edition (AMA Guides). (Ex. 3 at 4.) The parties did not present any further evidence with regard to permanent impairment. However, they stipulated Mr. Scott returned to work for a different employer after reaching MMI and stipulated his average weekly wage was $1,009.07, resulting in a compensation rate of $672.74.

As evident from the above, the Court must determine whether Mr. Scott has proven he injured his right arm at work, entitling him to workers' compensation benefits.

### Findings of Fact and Conclusions of Law

*General Legal Principles*

This Court must interpret the Workers' Compensation Law fairly, impartially, and without favor for either the employee or employer. Tenn. Code Ann. § 50-6-116 (2015). The employee in a workers' compensation claim must prove all essential elements of his claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[3] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). At a compensation hearing, the employee "must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff,* No. 2014-05-0005, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Tenn. Workers' Comp. App. Bd. Nov. 9, 2015).

*Compensability*

The first issue this Court must address is whether Mr. Scott sustained a compensable injury. Mr. Scott persuasively testified he injured his right arm at work on January 28, 2015, when he pulled on an overhead pipe. He also persuasively testified he reported his work injury to his boss shortly after his first visit with Dr. Bobo on February 3, 2015, which satisfies the thirty-day notice requirement provided in Tennessee Code Annotated section 50-6-201(a)(1) (2015).

Mr. Hardin corroborated Mr. Scott's testimony, testifying he was assisting Mr. Scott set a pipe and heard a pop and a noise that sounded like Mr. Scott was in pain. According to Mr. Hardin, Mr. Scott asked him to come downstairs, and when he did, he saw Mr. Scott holding his arm. Mr. Hardin further testified Mr. Scott complained of

---

[3] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

arm pain. Snyder presented no evidence to refute the testimony of Mr. Scott or Mr. Hardin.

Furthermore, Dr. Bobo, relying on the history provided by Mr. Scott and his findings during Mr. Scott's March 18, 2015 surgery, testified Mr. Scott's employment caused the torn biceps tendon due to "the straining on an object with his right arm and hand causing the biceps tendon to give way." (Ex. 2 at 18, 41.) The Court does not agree with Snyder's contention that Dr. Bobo is disreputable and notes Snyder failed to introduce any evidence to rebut Dr. Bobo's causation opinion.

To be compensable under the Workers' Compensation Law, an injury must arise primarily out of and occur in the course and scope of the employment, be caused by an incident or specific set of incidents, and be identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(14) (2015). Based on the evidence presented at the Compensation Hearing, the only suggested cause for Mr. Scott's right arm injury was the January 28, 2015 work incident described by Mr. Scott and Mr. Hardin.

Moreover, the opinion of the treating physician, selected by the employee from the employer's designated panel of physicians, is presumed correct on the issue of causation. Tenn. Code Ann. § 50-6-102(14)(E) (2015). This presumption, however, is rebuttable by a preponderance of the evidence. *Id.* Mr. Scott selected Dr. Bobo from Snyder's panel of physicians on April 13, 2015. As the authorized treating physician, Dr. Bobo's causation opinion is presumed correct. He causally related Mr. Scott's torn biceps tendon to Mr. Scott's work incident, and Snyder has not presented any evidence to rebut Dr. Bobo's causation opinion.

The Court finds that Mr. Scott established by a preponderance of the evidence that he sustained a compensable injury primarily arising out of and in the course and scope of his employment with Snyder.

*Medical Benefits*

Having so found, the Court turns to the issue of medical benefits. Pursuant to Tennessee Code Annotated section 50-6-204(a)(1)(A) (2015), "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter." Accordingly, Mr. Scott is entitled to reasonably necessary future medical treatment as recommended by his authorized treating physician, Dr. Bobo, and as required by Tennessee Code Annotated section 50-6-204 (2015).

Mr. Scott also seeks payment of past medical expenses. However, he provided no proof of the amount of these expenses or that they were reasonable and necessary. Mr. Scott did not admit any medical bills into evidence and did not ask Dr. Bobo to testify about the reasonableness and necessity of his prior treatment and charges. Therefore, the Court is unable to order any past medical benefits.

*Temporary Disability Benefits*

Mr. Scott further asks this court to order temporary disability benefits. To establish a case for temporary total disability benefits, an employee must show that: (1) he was totally disabled and unable to work as a result of a compensable injury; (2) a causal connection exists between the injury and the employee's inability to work; and (3) the duration of the period of the employee's disability. *Gray v. Cullom Mach., Tool & Die, Inc.*, 152 S.W.3d 439, 443 (Tenn. 2004).

Temporary partial disability arises when the temporary disability is not total. Tennessee Code Annotated section 50-6-207(2) (2015) provides that "[i]n all cases of temporary partial disability, the compensation shall be sixty-six and two-thirds percent of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition." When an injured worker is willing to return to work within his restrictions, but the employer is unwilling or unable to return the injured worker to work, the injured worker may be entitled to recover temporary partial disability benefits equal to the amount of temporary total disability benefits. *See Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *7-8 (Tenn. Workers' Comp. Panel Nov. 15, 2005).

Dr. Bobo kept Mr. Scott completely off work after his surgery on March 18, 2015. (Ex. 2 at 19.) Mr. Scott remained off work until March 31, 2015, when Dr. Bobo released him to light-duty work with restrictions limiting use of his right hand. (Ex. 2 at 19.) Dr. Bobo took Mr. Scott totally off work again on April 16, 2015, after Mr. Scott advised that Snyder required him to work outside his restrictions. (Ex. 2 at 21-22.) Mr. Scott testified he remained off work until August 25, 2015, when Dr. Bobo placed him at MMI.

No one from Snyder testified about the alleged light-duty work Snyder offered Mr. Scott. Moreover, in response to correspondence from Snyder's workers' compensation carrier, asking if certain duties would satisfy Mr. Scott's work restrictions, Dr. Bobo testified the mentioned duties would be "hard to do just one-handed." (Ex. 2 at 44-45.) Dr. Bobo further testified he took Mr. Scott off work to protect his arm. (Ex. 2 at 21-22.) Considering all of the evidence presented, the Court finds Mr. Scott was totally disabled from working, as a result of his work injury, from the date of his surgery on March 18, 2015, to March 31, 2015, when Dr. Bobo released him to light-duty work. The Court

further finds that Mr. Scott was totally disabled from working, as a result of his work injury, from April 16, 2015, to August 25, 2015, when he reached MMI.

With regard to the period between April 1, 2015, and April 15, 2015, Dr. Bobo placed Mr. Scott on restricted duty of no right-handed work. As such, he was not totally disabled and unable to work during this period. According to Mr. Scott, Snyder initially accommodated his restrictions. However, after about one and one-half weeks, Snyder sent him on a job without a helper, and he could not perform the job using one hand. Mr. Snyder ultimately told Mr. Scott he could not pay him to do nothing, and sent him home. Mr. Scott could not give specific dates regarding these events, so it is not clear when a period of temporary partial disability would begin. Consequently, Mr. Scott has not established entitlement to benefits during this period.

### Extent of Permanent Disability

Finally, the Court will address the issue of permanent disability benefits. For post-July 1, 2014 injuries, permanent partial disability is paid at sixty-six and two-thirds percent of the injured employee's average weekly wage for the period of compensation as determined by multiplying the employee's impairment rating by 450 weeks. Tenn. Code Ann. § 506-207(3)(A) (2015). Mr. Scott returned to work with a different employer during his initial compensation period, and did not request or show entitlement to any enhancement factors.

Dr. Bobo assessed a four percent permanent partial impairment to the body as a whole pursuant to the AMA Guides. (Ex. 3 at 4.) Subject to rebuttal by a preponderance of the evidence, Dr. Bobo's impairment rating is presumed accurate. Tenn. Code Ann. § 50-6-201(k)(7) (2015). Since Dr. Bobo's impairment rating was the only rating presented by the parties, it follows that Mr. Scott's permanent partial disability is 450 weeks multiplied by four percent, a period of eighteen weeks, at his compensation rate of $672.74.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Scott shall receive lifetime future reasonable, necessary, and related medical benefits pursuant to statute.

2. The amount of temporary disability benefit is $672.74 per week based on Mr. Scott's average weekly wage of $1,009.07.

3. Payment of past due temporary disability benefits in the amount of $13,839.22 shall be made for the periods between March 18, 2015, and March 31, 2015, and between April 16, 2015, and August 25, 2015.

7

4. Mr. Scott shall recover from Snyder permanent partial disability benefits in the amount of $12,109.32, representing a four percent permanent partial disability to the body, or eighteen weeks of compensation. These benefits, having accrued, are payable in a lump sum.

5. Costs of this cause of $150.00 are assessed against Snyder pursuant to Tenn. Comp. R. and Reg. 0800-02-21-.07 (2015), to be paid within five days of this order becoming final.

**ENTERED this the 26th day of January, 2016.**

**HON. JIM UMSTED**
**Workers' Compensation Judge**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Compensation Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within thirty calendar days* of the date the Workers' Compensation Judge entered the Compensation Hearing Order.

3. Serve a copy of the Compensation Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The party filing the notice of appeal, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within fifteen calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the party filing the appeal may file a joint statement of the evidence within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03 (2015).

6. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Workers' Compensation Appeals Board, the appeal will be docketed and assigned to an Appeals Board Judge for review. At that time, a docketing notice shall be sent to the parties. Thereafter, the party who filed the notice of appeal shall have fifteen calendar days after the issuance of the docketing notice to submit a brief to the Appeals Board for consideration. Any opposing party shall have fifteen calendar days after the filing of the appellant's brief to file a brief in response. No reply briefs shall be filed. Briefs shall comply with the Practice and Procedure Guidelines of the Workers' Compensation Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03(6) (2015).

# APPENDIX

Technical record:

- Petition for Benefit Determination, filed July 1, 2015;
- Dispute Certification Notice, filed July 21, 2015;
- Agreed Initial Hearing Order, entered October 30, 2015;
- Raymond Scott's Proposed Witness and Exhibit List, filed December 7, 2015;
- Snyder Services Plumbing Co.'s Proposed Witness and Exhibit List, filed December 8, 2015;
- Raymond Scott's Pre-Compensation Hearing Statement, filed December 18, 2015;
- Snyder Services Plumbing Co.'s Pre-Compensation Hearing Statement, filed December 18, 2015;
- Snyder Services Plumbing Co.'s Motion for Summary Judgment, filed December 18, 2015;
- Snyder Services Plumbing Co.'s Statement of Undisputed Facts Filed in Support of its Motion for Summary Judgment, filed December 18, 2015;
- Raymond Scott's Response to Snyder Services Plumbing Co.'s Statement of Undisputed Material Facts, filed January 5, 2016;
- Raymond Scott's Response in Opposition to Snyder Services Plumbing Co.'s Motion for Summary Judgment, filed January 5, 2016; and
- Benefit Review Conference Report, dated December 15, 2015.

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Stipulated Findings of Facts of the Parties:

- Mr. Scott is fifty years old, and presently lives in Shelby County, Tennessee.
- Mr. Scott was working as a plumber for Snyder Services on January 28, 2015.
- Mr. Scott selected Dr. Robert Bobo from a panel of physicians on April 13, 2015.
- Dr. Bobo placed Mr. Scott at maximum medical improvement for his alleged work-related right arm injury on August 25, 2015.
- Dr. Bobo has opined that Mr. Scott retains a four percent impairment to the body as a whole.
- Mr. Scott's average weekly wage while working for Snyder Services was $1,009.07, which resulted in a compensation rate of $672.74.
- Mr. Scott is currently working for another employer.

Stipulated Conclusions of Law of the Parties:

- This claim is governed by the Workers' Compensation Law for the State of Tennessee.

- Mr. Scott filed his Petition for Benefit Determination within the applicable statute of limitations.

Exhibits:
- EXHIBIT 1: Raymond Scott's medical records from Specialty Orthopedics (32 pages);
- EXHIBIT 2: Deposition Transcript of Dr. Robert Bobo;
- EXHIBIT 3: Form C-32 Standard Form Medical Report prepared by Dr. Robert Bobo;
- EXHIBIT 4: Form C-41 Wage Statement; and
- EXHIBIT 5: Benefit Review Conference Report.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 26th day of January, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Drew Davis, Esq., Employee's Attorney | | | X | drew@donatilaw.com billy@donatilaw.com |
| Devin R. Williams, Esq., Employer's Attorney | | | X | drw@psw-law.com |

Penny Shrum, Court Clerk
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov